DODGE COUNTY BANK, APPELLEE, V. COURTNEY & COM-
PANY, APPELLANT.

FILED OCTOBER 31, 1913.     No. 17,244.

Appeal: AFFIRMANCE: DIRECTING VERDICT. Where the record contains
sufficient evidence to sustain a directed verdict, and such verdict
is the only one which, under the pleadings and evidence, could
be permitted to stand, the judgment rendered thereon will be
affirmed.

APPEAL from the district court for Douglas county:
WILLIAM A. REDICK, JUDGE. *Affirmed.*

*Frank H. Woodland* and *Carl E. Herring,* for appellant.

*D. L. Johnson, H. C. Brome* and *S. O. Cotner, contra.*

FAWCETT, J.

From a judgment of the district court for Douglas
county upon a verdict directed for plaintiff, in an action
on a promissory note, defendant appeals.

The note in suit was dated February 12, 1909, payable
six months after date to the order of Courtney & Com-
pany, for $5,000, with interest at 6½ per cent., signed,
"Tolf Hanson, Chas. R. Courtney," and the collection of
same guaranteed by the written indorsement of the payee,
Courtney & Company. The answer alleges, substantially:
First. That the money which it is claimed constituted the
consideration for the note in suit was loaned to A. E. Tun-
berg prior to the execution of the note in suit; that plain-
tiff loaned the money to Tunberg, and that that loan was
the consideration for Tunberg's note, and is the identical
money for which the plaintiff seeks to recover, all of which
was well known to plaintiff; that the bank then had ex-
isting loans to Tunberg in amount of 20 per cent. of its
capital stock and surplus, and, for the purpose of avoiding
the banking laws, the note in suit was executed and de-
posited with plaintiff bank with full knowledge of all the

39

facts and for the purpose set out, and at the special instance and request of the bank; that Tunberg is solvent and the principal debtor for the consideration of the note in suit. Second. Want of consideration. Third. That the note is void, for the reason that it was knowingly and wilfully accepted by the bank in violation of section 3732, Annotated Statutes of Nebraska, and that the bank devised the scheme or artifice to avoid "said banking laws." Fourth. Payment in full. The reply denies all allegations in the answer not specifically admitted, and then pleads at considerable length facts and circumstances which will be substantially covered in the discussion of the case.

Defendant's brief contains no formal assignments of error, and argues but two points: That the record presents a "question of fact for submission to the jury;" and, the "law applicable." The former of these two propositions is all that need be considered, as the "law applicable" to a question of that kind is too well settled to require citation or consideration of authorities. If the case presents sufficient evidence to have sustained a verdict in favor of the defendant, if one had been returned, or is not sufficient to sustain the judgment directed for plaintiff, then in either case the judgment must be reversed. Otherwise, it must be affirmed.

The rule is well settled in this state that a trial court is not required to submit a case to the jury, unless the evidence supporting it is of such a character that it would warrant the jury in basing a verdict upon it. *Chicago, R. I. & P. R. Co. v. Sporer,* 69 Neb. 8; *Iowa Hog & Cattle Powder Co. v. Ford,* 87 Neb. 708. This rule applies as well to a defense tendered by answer as to a cause of action tendered in a petition. The execution and delivery of the note being admitted, is there sufficient evidence in the record to have sustained a verdict for defendant, had the case been submitted to the jury and such a verdict returned? In *First Nat. Bank v. Smith,* 57 Neb. 454, we held: "Where the conclusion reached by the jury was the only one permissible under the evidence, the judgment

rendered on the verdict will be affirmed." This is now the
settled rule in this court, and we think it is equally ap-
plicable to a case where the record shows that a directed
verdict is the only one, under the pleadings and evidence,
which could have been permitted to stand. Applying that
rule to the case at bar, an affirmance must follow.

A careful examination of the abstract and supplemental
abstract, we think, shows, without room for reasonable
disagreement, or inference to the contrary, the following
facts: Plaintiff is a banking corporation located at Hooper,
Nebraska. One A. E. Tunberg was a business man at
Hooper and a patron of plaintiff bank. Tolf Hanson was
engaged in the restaurant business in Omaha. Charles R.
Courtney was a member of Courtney & Company, and the
manager of its grocery business in Omaha. Hanson was
a stockholder in the company, and, as stated by Mr. Court-
ney, was considered as Courtney & Company's best cus-
tomer. Tunberg and Hanson were cousins. They were
both born at the same place in Sweden, and were ac-
quainted before they came to the United States. In 1908
Hanson had become seriously involved financially, so
much so that his credit with the Omaha banks had been
exhausted. Courtney was his best friend. Tunberg was
his cousin. Both were men of financial standing and
credit, and to them he appealed for assistance in his ex-
tremity. In response to a request from Hanson, Tunberg
made a trip to Omaha. Hanson's necessities were dis-
cussed. Upon being interrogated by Mr. Tunberg as to
the sum required, Hanson stated that he needed $10,000.
Mr. Tunberg was unable to supply the money. After con-
sidering the matter in an effort to devise some plan by
which the money might be obtained, Tunberg signed a
note, dated October 1, 1908, for $10,000, payable one year
after date, to the order of Hanson, with interest at 6 per
cent., and Hanson gave him in exchange therefor his note
for a like amount. Hanson then tried, unsuccessfully, to
discount the note he had received from Tunberg at the
First National Bank in Omaha. Having failed there,

Tunberg tried to secure money for Hanson from his own bank (plaintiff) at Hooper. He had already borrowed from the plaintiff all, or substantially all, that plaintiff, under the law, could lend to one person. Tunberg disclosed to plaintiff the use to which he intended to put the money, or rather the person for whom he was desiring to secure the loan. The president of the bank being absent from home, the cashier agreed to make a loan of $5,000 to Hanson upon a note to be signed by Hanson and Courtney. Thereupon Tunberg gave the bank his own note for $5,000, and obtained a draft payable to the order of Tolf Hanson for that sum, under an agreement that he would obtain the note of Hanson and Courtney and substitute the same for the note he was then giving. In accordance with that arrangement, Tunberg mailed, or personally took, the draft to Hanson, and, under date of February 12, 1909, a note for the amount of the draft was signed by Hanson and Courtney, payable six months after date to the order of Tunberg. This note Tunberg delivered to the plaintiff bank, and received from the bank the note which he had given at the time he obtained the draft. The note remained in the bank for something like two months, and until the return home of the president. When the president saw the note, payable to Tunberg and indorsed by him to the bank, he objected to it upon the ground that Tunberg, as an indorser of the note, incurred a liability to the bank, which, added to his personal obligations to the bank, would be in excess of the amount the bank could legally lend to any one person. Thereupon, the president prepared the note in suit and handed it to Tunberg, telling him to have it signed by Hanson and Courtney and indorsed by Courtney & Company, and substitute it for the note to which the president was objecting. This matter was explained by Tunberg to Hanson and Courtney, whereupon they each executed the note in suit, and Mr. Courtney executed the indorsement upon the back thereof. The note was then taken by Tunberg to the bank and substituted for the other note signed by Hanson and Courtney, in which

Tunberg appeared as the payee, and the latter note was delivered to Tunberg, who mailed it to Hanson.

In the light of these facts, defendant's contention is not sound that Tunberg was acting as the agent of the bank in obtaining the note from Hanson and Courtney, indorsed by Courtney & Company, in order to enable the bank to make an excess loan to Tunberg. On the contrary, there is no room for doubt that Tunberg was acting as the agent of Hanson, with the full knowledge and concurrence of Courtney, in an endeavor to obtain money for Hanson to help him in his hour of need. The bank knew that this money was being obtained for Hanson. It was unwilling to make any further loan to Tunberg, or to even accept him as an indorser, not because it did not believe he was solvent, but because it had already made him loans, personally, substantially up to its limit. The bank knew that it was making the loan to Hanson, and it wanted Hanson's note, with what it considered a good signer with him. It did not desire, and evidently did not think it needed, the indorsement of Mr. Tunberg. The transaction on the part of the plaintiff seems to have been a perfectly straightforward business transaction.

But, it is said by defendant that the note, so far as Courtney was concerned, was without consideration, for the reason that Hanson had already obtained the money, and that when the bank parted with the $5,000 to Tunberg, and took his note, it was a closed transaction, and therefore the note, so far as Courtney is concerned, is without consideration. This theory is not borne out by the testimony of even Mr. Courtney himself. As shown in the supplemental abstract, he testified that he signed the note payable to the order of Tunberg, on the day it bears date, in Hanson's office; that Hanson told him that Tunberg had the $5,000; that he said: "Alex got the money, but we have got to sign a note. You will do it, won't you?" He admits that at that time he saw the draft, or the paper purporting to be the draft. He testified that that was the time when Tunberg said he owed

the bank $4,000, and that the bank wanted a couple of friends to sign the note; that it would be an excess loan, and that that was "all the bank wanted us to sign the note for. He did not use the language 'excess loan,' but that is what he meant." He testified that he had had no talk with Tunberg about raising money for Hanson before February 12, the date the first note was signed, but had had lots of talks of that kind with Hanson. He then testified that four weeks later he signed the note in suit. He says that at that time he was told by Tunberg that the president of the bank, on returning from Texas, was not satisfied with the note that had been previously signed, "because it defeated the object of the note, and that he, Mr. Lyman, had made out a note and sent it down for us to execute." It is clear, therefore, by Mr. Courtney's own testimony, that the note in suit was signed with the knowledge that it was going to take the place of the note which he had signed with Hanson to Tunberg as payee, on February 12, 1909, upon which latter note he knew that at the time it was signed Hanson was receiving a draft for $5,000 from the bank. It is made clear, therefore, by all of the testimony in the case that the making and deposit by Tunberg of his individual note and obtaining the draft thereon was under an agreement that he would substitute the note of Hanson and Courtney therefor; that the note by Hanson and Courtney to Tunberg and the subsequent note by them to Courtney & Company and indorsed by Courtney & Company and delivered to plaintiff bank, and the surrender by plaintiff bank of the original Tunberg note to Mr. Tunberg, were all parts of one single transaction, that the money passed from the plaintiff bank to Hanson as a result of that transaction, and that the purpose of the transaction was to bring about that result.

In the light of these facts, no verdict could have been permitted to stand other than the one which the trial court directed.                                        AFFIRMED.

LETTON, ROSE and SEDGWICK, JJ., not sitting.